UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA CARD, | ) | |
| | ) | Case No. 1:08-CV-2325 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE KATHLEEN M. O'MALLEY |
| | ) | |
| CITY OF CLEVELAND, | ) | |
| | ) | |
| Defendant. | ) | <u>MEMORANDUM AND ORDER</u> |
| | ) | |
| | ) | |

Before the court are Plaintiff Linda Card's ("Card") motion for class certification and appointment of counsel [dkt. 19] and Defendant City of Cleveland's ("Cleveland") motion for summary judgment [dkt. 22].

For the following reasons, the court **GRANTS** Card's motion for class certification and **DENIES in part and GRANTS in part** Cleveland's motion for summary judgment.

I. **BACKGROUND**

On October 9, 2009, Card filed her Second Amended Complaint alleging one count of gender discrimination in violation of 42 U.S.C. §§ 2000e *et seq.* (commonly known as Title VII), and one count of gender and race discrimination in violation of Ohio Revised Code § 4112.01 *et seq.*

Card is an African-American woman who has been employed by Cleveland's Water Department since October of 2000 in various capacities, primarily as a secretary [dkt. 17, ¶ 13]. Since 2003, Card has unsuccessfully sought promotion to the position of Water Plant Operator I [dkt. 17, ¶ 15]. Card further alleges that, despite being qualified for the position, Cleveland hired males who were less

qualified than she and other similarly situated women [dkt. 17, ¶ 15].

As a result, Card seeks class certification pursuant to Federal Rule of Civil Procedure 23 on her own behalf and on behalf of all other persons similarly situated.  Card proposes that the following class be certified:[1]

> All past, current and future women since 2003 who were, are, or will be passed over for promotions to the position of Water Plant Operator 1, or who did not apply for the position of Water Plant Operator 1 due to the discriminatory hiring practices of the City of Cleveland, Division of Water.

[dkt. 19, at 7].

### A.    Ohio Civil Service Laws

The hiring and promoting of civil service positions in Ohio, including the position of Water Plant Operator, are governed by the state's civil service rules found in the Ohio Constitution, the Ohio Revised Code, and the City of Cleveland Charter.

Article 15, section 10 of the Ohio Constitution provides that:

> Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations.  Law shall be passed providing for the enforcement of this provision.

Ohio Const. Art. 15, § 10 (adopted September 3, 1912).

---

[1] This class definition is different than originally proposed in Card's Second Amended Complaint, as it omits African-American employees.  *Cf*, Second Amended Complaint, dkt. 17, ¶ 5:

> All past, current and future females and/or African-Americans who were, are, or will be passed over for promotions to the position of Water Plant Operator 1, or who did not apply for the position of Water Plant Operator 1 due to the discriminatory hiring practices of the City of Cleveland, Division of Water.

Indeed, it appears both from this change and Card's briefing that she has withdrawn her race discrimination claim, though she has not said so expressly.

The Supreme Court of Ohio has held that, with respect to Article 15, section 10,

> The underlying purposes which lead to the passage of this provision were to secure the maximum of efficiency and integrity in the public service; to restrain persons occupying positions in the classified service from political activity; to prevent discrimination for political, religious or racial reasons; and to guarantee permanent tenure to persons in the classified service.

*State ex rel. Neffner v. Hummel*, 142 Ohio St. 324, 329 (1943); *see also Cleveland Civil Service Employees v. City of Cleveland*, 2002 WL 226863 (Ohio App. 8 Dist. Feb. 14, 2002 (No. 79593)).

As article 15, section 10 of the Ohio Constitution is not self-executing, Ohio Revised Code, chapter 124, provides the rules for appointing or promoting an employee in the civil service and delegates to the various civil service commissions, as well as the promulgation of civil service rules.[2]

The Charter of the City of Cleveland, Chapter 27, section 129 describes the civil service test to be administered and section 128(f) provides that regular appointments shall be made from the "eligible list" comprised of the three highest scoring applicants.  Absent an eligible list, Cleveland may make a temporary appointment.  Section 130 of the Charter provides for temporary appointments:

> Eligible lists created by the Commission shall remain in force not longer than two years. In the absence of an appropriate eligible list, any place may be filled temporarily, without test, for the period limited by the civil service rules, but not exceeding one year. During such period the Commission shall hold the necessary tests for filling any such place permanently. With the consent of the Commission, persons may be temporarily employed for transitory work without test, but no such employment shall continue for more than sixty days, or be renewed.

---

[2] Ohio Revised Code § 124.06 provides that:
> No person shall be appointed, removed, transferred, laid off, suspended, reinstated, promoted, or reduced as an officer or employee in the civil service, in any manner or by any means other than those prescribed in this chapter, and the rules of the director of administrative services or the municipal or civil service township civil service commission within their respective jurisdictions.

Charter of City of Cleveland, Chapter 27, § 130 (effective November 4, 2008).

The hiring and promoting practices of Cleveland, however, do not appear to adhere to the state's and city's civil service laws and requirements.

### B.    Cleveland's Water Department Hiring Practices

Card has put forth evidence showing that, between December 1, 2003 and July 1, 2009, Cleveland has not hired a single woman to the position of WPO I [dkt. 19, at 9-14].  Further, as of July 1, 2009, there were 36 WPO's. All were male [dkt. 19, at 9].

Card argues, and offers evidence to show that:

> [T]he Division of Water never followed the established civil service procedures.  Most of the current WPO's (31 out of 36) and most of the employees who served in the position since 2003 (61 out of 67) were subjectively assigned as Temporary Appointments. Once assigned, the[y] remained in the position regardless of whether they passed the test or where they placed on the eligible list.
> . . .
> Of the 67 employees who have served in the WPO position since 2003, twenty-seven (27) of them have no record of ever having taken or passed the civil service exam. . . . Even though the 27 never passed the exam, they remained in the position of WPO as temporary appointments, some for as long a period as 20 years.

[dkt. 19, at 9-10].

Cleveland asserts that the "lack of African Americans and female WPO's is due to promotion - not discrimination." [dkt. 25, at 4].  Cleveland maintains that the city "has traditionally employed women and African Americans as WPO I and WPO II." [dkt. 25, at 12].   Cleveland can point to exactly four women it has hired to WPO I or WPO II positions since 2002:

> 1.    Deborah Hanby (female, African-American) – hired on June 10, 2002 and promoted to WPO II on March 29, 2004 and promoted again on August 1, 2005 to manager;
>
> 2.    Lovonia Harvey-Washington (female, African-American) – hired as a WPO I on December 1, 2003 and promoted to WPO II on

-4-

> July 31, 2006;
>
> 3.    Rayka Pekova (female, white) hired as a WPO I on October 20, 2003 and promoted to WPO II on August 30, 2004
>
> 4.    Angienette Suggs (female, African-American) – hired as WPO I on April 21, 2003 and promoted to WPO II on August 28, 2006

[dkt. 22, at 3-4].

Cleveland asserts it promotes individuals "pursuant to the language found in the [Collective Bargaining Agreement ("CBA")] between the City and Union Local 18 and MCEO" which requires simply that Cleveland hire the "most qualified" individual [dkt. 22, at 7].  As shown below, the qualifications for a WPO I are minimal.  Despite Cleveland's reliance on the CBA, it is the civil service law that must govern the hiring and promoting of Water Plant Operators.[3]

## II.    Cleveland's Motion for Summary Judgment

Cleveland asserts two arguments in its motion for summary judgment.  First, that Card cannot establish her prima facie case of gender discrimination [dkt. 22, at 10-12].  Second, that Card failed to exhaust her administrative remedies [dkt. 22, at 12].  Each of Cleveland's arguments are discussed in turn.

### A.    Standard of Review

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial

---

[3]  Ohio Revised Code, Chapter 4117.08(B) states:
> The conduct and grading of civil service examinations, the rating of candidates, the establishment of eligible lists from the examinations, and the original appointments from the eligible lists are not appropriate subjects for collective bargaining.

burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004).  The moving party, however, is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the moving party relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

If the movant succeeds, the burden then shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e)(2):

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial. . . .

Fed. R. Civ. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  Parties opposing summary judgment must go beyond the pleadings and produce some type of evidentiary material in support of their position.  *See Celotex,* 477 U.S. at 324.  In this regard, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment"; rather, "Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact."  *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379-80 (6th Cir. 2007) (citation omitted).  Furthermore, the non-moving party must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87.

In determining whether a genuine issue of material fact exists, this Court must view all of the

evidence in the light most favorable to the nonmoving party.  *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004);  *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000).  A fact is "material" only if its resolution will effect the outcome of the lawsuit.  *Anderson,* 477 U.S. at 248.  An issue is "genuine" if the evidence is such that a reasonable juror "could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict" or whether the evidence is "so one-sided that [the moving party] must prevail as a matter of law."  *Id.* at 252.

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor of the non-moving party.  *Id.*; *see also Anderson*, 477 U.S. at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict – whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.") (emphasis in original) (internal quotations omitted).

## B.  Card has Established her Prima Facie Case for Discrimination

### 1.  Legal Framework for Analyzing Discrimination Claims

The framework for analyzing claims under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-17, and 42 U.S.C. § 1981) and Ohio Revised Code section 4112 was set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Carter v. Univ. of Toledo*, 349 F. 3d 269, 272 (6 th Cir. 2003) (citing *Ohio Civil Rights Comm'n v. Ingram*, 69 Ohio St. 3d 89, 630 N.E. 2d 669, 674 (1994)) (the federal and state discrimination claims may be analyzed together "because Ohio's requirements are the same as under federal law").  The framework first requires that the plaintiff establish a prima facie

case.  *McDonnell Douglas*, 411 U.S. at 802; *see also Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006).  "[A] plaintiff may establish discrimination either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an inference of discrimination."  *Kline v. Tenn. Valley Authority.*, 128 F.3d 337, 348 (6th Cir. 1997).  "When using circumstantial evidence to create an inference of discrimination, the complainant must carry the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination by his or her employer."  *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).

If the plaintiff establishes a prima facie case, the plaintiff is entitled to a presumption that the defendant discriminated against him or her in violation of Title VII and the burden of production shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for the adverse treatment.  *Id.* (citations omitted).  "If the defendant meets this burden, the presumption of discrimination falls away and the plaintiff then needs to show that the defendant's 'legitimate, nondiscriminatory reason' was 'pretext for discrimination.'" *Id.* at 706-07 (citations omitted).  Throughout this framework, the plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, the intent of the defendant to discriminate.  *Id.* at 707;  *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

To establish a prima facie case, the plaintiff must allege and demonstrate that: (1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees.  *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004).

## 2.     Card's Discrimination Claims

Here, Card argues that Cleveland discriminated against women, including her, when it failed to

hire women to the position of Water Plant Operator 1 [dkt. 17, ¶¶ 27, 32].  Specifically, Card argues, discrimination is found in the manner in which Cleveland hires individuals to *temporary* appointment positions as Water Plant Operators - Cleveland excludes women from temporary appointments, which become, practically speaking, permanent positions.

Cleveland does not dispute that Card (1) is a member of a protected class, (2) that she suffered an adverse employment action when she was not appointed[4] to WPO I, or (3) that individuals outside the protected class were appointed in her stead.  Cleveland does, however, dispute that Card was qualified for a regular appointment to WPO I.

Cleveland asserts that it is entitled to summary judgment because Card cannot maintain a prima facie case of gender discrimination as "she was not the most qualified for the position of WPO I." [dkt. 22, at 10].[5]

To be qualified for the WPO I position, the applicant must possess certain minimum qualifications.  Cleveland and Card both acknowledge the City of Cleveland Job Posting requirements:

> The successful candidate must have a High School Diploma or GED, must be able to lift 50 pounds, must be able to walk distances.  The candidate must be able to pass the OHSA mandated respiratory physicals.  The candidate must be able to attain an Ohio EPA Class I Water Supply license within 18 months of hire.  The candidate must have a valid Ohio driver's license.

[dkts. 22-1; 24-4; 24, at 4].

---

[4] Failure to promote claims are analyzed the same as failure to hire cases.  *See, e.g., Brown v. Tennessee*, 693 F.2d 600, 603 (6th Cir. 1982).

[5] Cleveland is wrong when it contends that Card must prove that she was the "most" qualified for the WPO I position in order to establish a prima facie case of discrimination.  While the question of whether someone might have been more qualified than Card might be relevant to the question of pretext, it is not relevant at the prima facie stage.

The Ohio Civil Service requires similar minimum qualifications.[6]  Card claims that she meets these clearly defined minimum standards [dkts. 17, ¶16; 24, at 4].  Cleveland maintains that she is unqualified.

Cleveland supports its position by invoking its collective bargaining agreement ("CBA") with Union Local 18 and MCEO, which provides ambiguous and subjective standards[7] [dkt. 22, at 7-8].  Article 24 of the CBA provides for promotions:

> When a vacancy occurs which the City determines there is a need to fill or a new job is created, the City shall post notice of the opening in the Division where the opening exists…. The vacancy will be awarded within the Division in which the vacancy exists to the most qualified applicant. If there are two or more equally qualified Applicants, the vacancy will be awarded to the qualified Applicant with the most job classification seniority….."

[dkt. 22, at 7; dkt. 21-1, at 14-15].

When Card sought promotion to the WPO I in 2007, there was no eligible list [dkt. 15, ¶ 20; dkt. 24, at 8].  Thus, the position was filled with a temporary appointment.  In May 2008, Card failed the Civil Service exam and, Cleveland argues, "as a result did not appear on the eligible list for appointment . . . and could not be placed in a WPO I position *as an RA* [regular appointment]." [dkt. 22, at 11] (emphasis added).  Accordingly, Cleveland asserts, Card cannot prove the third prong necessary to establish a prima facie case.

Card's argument, however, does not rest on the fact that she was not placed in a WPO I position,

---

[6] The Ohio Civil Service Minimum Qualifications for Water Plant Operator I:
A High School Diploma or GED is required.  A valid State of Ohio Driver's License is required.  Must be able to obtain and OEPA Class I Certification within 18 months of the date of hire.  Must be able to pass a respiratory fitness test, and be in good physical shape.  Plant operation experience is preferred.
[dkt. 24-4, at 2].

[7] As noted earlier, the CBA cannot excuse Cleveland's compliance with Ohio civil service laws and rules.

-10-

*as a regular appointment*, but that she, and other similarly situated women, were never offered *temporary appointments*, where passage of the civil service exam is not required or expected.  Card clearly argues that the "[t]est results are meaningless" in Cleveland's hiring and promotion decisions [dkt. 24, at 4].  Indeed, Card offers evidence that 60 of the 67 men that have held the position of Water Plant Operator 1 since 2003 have "either not passed the test or did not rank high enough on the eligible list after testing to remain in the position to which they were 'temporarily' appointed." [dkt. 24, at 1].  Card also provides documents suggesting that "27 of the 67 males in the WPO position since 2003 never passed the civil service examination." [dkt. 23, at 2]. Similarly, Card shows that, "since December 1, 2003, 67 employees have served as WPO's, *and all were male*." [dkt. 24, at 2] (emphasis added).  Because temporary appointments are made without the benefit of an eligible list of those who have taken - let alone passed - the civil service exam,[8] the city cannot use the civil service exam as definitive evidence of Card's qualifications, or lack thereof.

At the time of temporary appointments, Cleveland appears to have great discretion on who to appoint to WPO I positions and cannot point to clear criterion for its appointment decisions.  Card offers evidence that 60 of the 67 WPO I employees simply are not qualified under the Ohio Civil Service rules.  Part of Card's argument is that the discrimination occurred at the time of the *temporary appointments* and *before* the civil service tests were even administered.  Because temporary appointments need not meet many of the civil service requirements and are based, in part, on the ambiguous and subjective CBA agreement, Cleveland cannot maintain its claim at this stage of the litigation that Card is unqualified for the position.

---

[8] Charter of City of Cleveland, Chapter 27, Section 130, provides, in part: "In the absence of an appropriate eligible list, any place may be filled temporarily, without test, for the period limited by the civil service rules . . . ."

Cleveland argues, apparently in the alternative, that it had a "legitimate, non-discriminatory reason" for the promotions: "pursuant to the Collective Bargaining Agreement, the City chose the most qualified applicants for the position." [dkt. 25, at 11].  Specifically, Cleveland argues that three male employees - Joseph Loduca, Tuan Paci, and Terence Daley - were more qualified for the position of WPO I [dkt. 22, at 8].  "Pursuant to the CBA, they were placed into the position as TA's.  Each later took and passed the Civil Service exam for WPO 1 and are now Regular Appointments." [dkt. 22, at 8].  Card, however, disputes that Paci and Daley were ever qualified for regular appointments because they were placed outside promotion eligibility on the 2008 eligible list. [dkt. 23, at 3-4].  Card has rebutted Cleveland's "legitimate, non-discriminatory reason" by putting forth sufficient evidence to show that Cleveland's characterization of these other appointees as "more qualified individuals" is merely "pretext for discrimination."  The lack of clear qualification requirements at the temporary appointment stage of the hiring process and the complete lack of females hired to the position of WPO I since late 2003 is sufficient to raise genuine issues of material fact regarding pretext.

It is well-established that, when reviewing a motion for summary judgment, this Court must view all contested facts and draw all reasonable inferences in favor of Card, the nonmoving party.  Card has put forth evidence showing a complete lack of female Water Plant Operators.  In addition, Card has shown that Cleveland uses subjective hiring standards for temporary appointments and ignores the testing requirements it asks this Court to impose upon her.  Accordingly, a finder of fact could make a reasonable inference that gender discrimination has occurred.

Card, however, has not maintained her prima facie case for race discrimination.  While she has put forth sufficient evidence at this stage of the litigation to support her claim of gender discrimination,

-12-

she has failed to provide adequate evidence of race discrimination.[9]  Card's response to Cleveland's motion for summary judgment does not even address the racial discrimination claim [dkt. 24] and she has not shown the racial composition of those appointed to the position she sought.  Accordingly, to the extent she has not withdrawn her race claim, Cleveland is entitled to summary judgment thereon.

### C. Exhaustion of Administrative Remedies

Cleveland misses the point of Card's claims when it argues that:

> Card failed to exhaust her administrative remedies of appealing her test score to the Cleveland Civil Service Commission pursuant to Civil Service Rule 4.50. Rule 4.50 provided Card with an opportunity to review her answers on the exam and dispute her exam score.[10] She did not take this opportunity. As such, she did not exhaust her administrative remedies and this case should be dismissed.

[dkt. 22, at 12].

Card alleges that Cleveland promotes without regard to the civil service examination and does so in a discriminatory manner, rendering the civil service exam meaningless.  Further, in so far as Card's argument is that she was discriminated against at the *temporary appointment* stage of the hiring process where civil service exams are not required, Cleveland's argument is not material. Accordingly, this

---

[9]  As noted, Card seems to recognize this deficiency as she has removed her race based claim from the proposed class definition. *Compare* Card's Second Amended Complaint [dkt 17] *with* Card's Motion for Class Certification [dkt. 19]; *see also supra* note 1.

[10] Civil Service Rule 4.50:

**Establishing Answer Key and Review of Examination Papers:**
"Commencing with the day following the administration of the written part of the examination, the questions and answers thereto which the Commission proposes to use in grading the examination *shall be available to applicants in such examinations* in the Office of the Commission for a period of five (5) working days. During this five (5) day period *any competitor who desires to challenge any answer contained in the tentative answer key shall submit such a challenge in writing together with authoritative proof of his/her claim...*"
(emphasis added by Cleveland)

argument is without merit.

**D.    Cleveland's Motion for Summary Judgment is Denied in Part, Granted in Part**

Issues of genuine material fact exist as to Card's gender discrimination claims and, accordingly, Cleveland's motion for summary judgment is denied as to those claims.

As Card has failed to make a prima facie case for racial discrimination (or has abandoned those claims), Cleveland's motion for summary judgment on those claims is granted.

The Court now turns to Card's motion for class certification.

**III.    CARD'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF COUNSEL**

Card seeks class certification, pursuant to Federal Rule of Civil Procedure 23, of past, current, and future women who were not hired or promoted to the position of Water Plant Operator I due to Cleveland's discriminatory hiring practices. Card seeks substantive declaratory and injunctive relief related to Cleveland's hiring and promotional practices regarding the position of Water Plant Operator and seeks back pay and compensatory and punitive damages in favor of the class.

Before a court can certify a class, the court must conduct a "rigorous analysis" into whether the requirements of Rule 23 have been satisfied. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).

**A.    Federal Rule of Civil Procedure 23**

Federal Rule of Civil Procedure 23(a) establishes four perquisites necessary to maintain a class action:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the

-14-

interests of the class.

Fed. R. Civ. P. 23(a).

If the plaintiff can meet the requirements of Rule 23(a), she next must demonstrate that the case fits into one of three types of class actions permitted by Rule 23(b).  Here, Card asserts that this case satisfies the second type of class actions, as described in Rule 23(b)(2): "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  The Supreme Court has noted that "[c]ivil rights cases against parties charged with unlawful, class based discrimination are prime examples." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (citing the advisory committee notes).

"Although the district court has broad discretion in determining whether a particular action complies with Rule 23(a), by meeting all four requirements, the application of these requirements should not be so strictly applied that the policies underlying class actions would be undermined." *Weathers v. Peters Reality Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974) (where the  plaintiff "made allegations that she was discriminated against because of her race. She also alleged that there are others of her race who are, have been or will be seeking housing' at the defendants property" (internal quotations and citations omitted)).

The party moving for class certification bears the burden of proving that all of Rule 23's requirements have been satisfied.  *In re Am. Medical Sys. Inc.,* 75 F.3d 1069 (6th Cir. 1996).

Rule 23(a) and Rule 23(b) are discussed in turn below.

**B.      Rule 23(a) Analysis**

**1.      Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."[11] While it is common to refer to this rule as the "numerosity requirement," the number of proposed class members is only one of several considerations.  Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3:6, at 350 (4th ed. 2002).

Where proposed classes are large in number, this rule is typically satisfied.  *Id*.  Yet, "[t]here is no strict numerical test for determining impracticability of joinder."  *In re Am. Medical Sys. Inc.*, 75 F.3d, at 1079.  Rather, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980).  *See also, Senter*, 532 F.2d 511, 523 n. 24 ("There is no specific number below which class action relief is automatically precluded. Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case.").

"In ruling on a class action a judge may consider reasonable inferences drawn from facts before [her] at that stage of the proceedings, and an appellate judge will generally defer to the District Court's determination that a class is sufficiently numerous to make joinder impractical." *Senter*, 532 F.2d at 522.  "When class size reaches substantial proportions, however, the impracticability requirement is usually satisfied by the numbers alone."  *In re Am. Medical Sys. Inc.*, 75 F.3d, at 1079.

In *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452, 463 (E.D. Pa. 1968), the court certified a class of 25 members, reasoning that 25 is a "large number when compared to a singe unit."  Accordingly, the court saw "no necessity for encumbering the judicial process with 25 lawsuits, if one will do."  *See also Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375

---

[11] Impracticable does not mean impossible.  *See, e.g., Taylor v. CSX Transp., Inc*, 264 F.R.D. 281 (N.D. Ohio 2007).

F.2d 648 (4th Cir.1967) (class of eighteen individuals found sufficiently numerous); *Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D.Pa.1990) (certification of class may be proper even with class as small as fourteen members); *Meyer v. Stevenson, Bishop, McCredie, Inc.*, 1976 WL 788, (S.D.N.Y.1976) (certifying class of thirty individuals).

Impracticability can also be shown through the consideration of other factors, including "judicial economy through avoiding multiple lawsuits," the size of individual claims, "financial resources of class members," the ability or motivation of class members to institute individual suits, and requests for prospective and injunctive relief that could affect future class members." *Farm Labor Organizing Committee v. Ohio State Highway Patrol*, 184 F.R.D. 583, 586 (N.D. Ohio 1998) (citing 5 James Wm. Moore, Moore's Federal Practice § 23.22 (3d ed.1998)). "The nature of the action and the type of class certification sought is also important." *Id*.

In *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005), the court certified a class of 28 members after weighing the monetary size of the individual claims, the financial resources of individual class members, and the cost of litigation. The individual plaintiffs sought relief for FLSA violations, entitling them to less than one thousand dollars each; the court found that the "financial costs and hardships of separate litigations . . . would certainly exceed their recoveries manyfold." *Id*. at 181.

Thus, the requirement of numerosity need not be resolved on the basis of an arbitrary numerical calculation alone, but, rather, with reference to the particular circumstances of the action. *General Tel. Co.*, 446 U.S. at 330.

In civil rights actions involving discrimination, "the numerosity requirement is usually satisfied by the showing of a colorable claim by the named plaintiff who is a member of a larger class having potentially similar claims." *Weathers v. Peters Reality Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974). See

-17-

*Farm Labor Organizing Committee v. Ohio State Highway Patrol*, 184 F.R.D. 583, 586 (N.D. Ohio 1998) (In a Title VII discrimination class, the court noted that "[t]he fact that there are currently only two named plaintiffs with standing does not mean that the class is not numerous.").

"For purposes of establishing numerosity, smaller classes are more readily certified when the relief sought is injunctive relief, the benefits of which would inure not only to the known class, but also to a future class of indefinite size." *See Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975); s*ee also*, *San Antonio Hispanic Police Officer's Organization, Inc. v. City of San Antonio*, 188 F.D.R. 433, 442 (W.D. Tex. 1999) ("[I]n certifying a class seeking only injunctive relief, the numerosity requirement may be fulfilled even when the class is small because the benefits to be gained not only inure to the benefit of the known class but will benefit a future class of indeterminate size.").

"These unknown future members should be properly considered and included as a part of the class and joinder of such persons is inherently impracticable." *San Antonio Hispanic Police Officer's Organization, Inc. v. City of San Antonio*, 188 F.D.R. 433, 442 (W.D. Tex. 1999)  (internal quotations and citations omitted).

In *Nash v. City of Oakwood, Ohio*, 94 F.R.D. 83 (S.D. Ohio 1982), the plaintiff was a  female African-American applicant for the position of public safety officer and alleged sex discrimination where "no female applicant has ever passed the City of Oakwood's physical agility test." *Id*. at 87.  Addressing the numerosity requirement of Rule 23(a)(1), the court noted that an inference could be made "that the City of Oakwood has possession of [the applicants'] names, and very possibly their address." Approximately thirty women applied for the position and sixteen took and failed the exam.  *Id*. Accordingly, under these facts, the *Nash* court continued, "it would appear that joinder of the women applicants would not be impracticable, and that, consequently, class certification should be refused."

-18-

*Id*.  Nonetheless, the court continued its analysis and found that:

> Such a result cannot be reached herein, however, in light of the fact that Plaintiff has sought to represent not only past applicants for the position of public safety officer, but has additionally requested that future applicants for the position of public safety officer be included in the class definition.
>
> Where a class representative seeks relief on behalf of future applicants, the Sixth Circuit has indicated that the numerosity requirement of Rule 23 would be satisfied. *Afro-American Patrolmens League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974).[12]

*Id*. at 87-88.

---

[12] The court in *Afro-American Patrolmens League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974), addressing facts similar to the instant case, certified a class that included future potential victims of alleged discriminatory employment practices.  The court held:

> The defendants challenged the right of the plaintiffs to proceed in a class action under Rule 23, Fed.R.Civ.P. It is their contention that the possible class consists of no more than the 35 minority group members who were eligible to take the most recent examination for line sergeant or the 17 members of that group who actually took the examination. In their complaint the plaintiffs sought to represent a class 'composed of all present and future minority members of the Toledo Police Department who have been discriminated against by Defendants' use of unvalidated and culturally biased tests, practices, and procedures, . . . .' The district court certified the class to include all present and future minority police officers, and we hold that this class is so numerous as to make joinder of all impracticable. It seems evident that the plaintiffs adequately represent the members of this class and there is no claim that questions of law or fact common to all do not exist in the case or that the claims of the representatives are not typical of those of the class. We have held that class actions are properly utilized in cases involving alleged discrimination in employment practices. *Manning v. International Union, UAW*, 466 F.2d 812 (6th Cir. 1972), cert. denied sub nom., *Manning v. General Motors Corporation*, 410 U.S. 946, 93 S.Ct. 1366, 35 L.Ed.2d 613 (1973). As this court pointed out in *Tipler v. E. I. duPont deNemours & Company*, 443 F.2d 125, 130 (1971), *a suit by a single employee which is not brought as a class action 'is perforce a sort of class action for a fellow employee similarly situated' when it attacks the employment practices of the employer on grounds of discrimination. We conclude that the district court correctly determined that this case should proceed as a class action.*

*Id*. (emphasis added).

-19-

The *Nash* court went on to certify a class similar to the proposed class in the instant case.[13]

Here, Card seeks to have the following class certified:

> All past, current and future women since 2003 who were, are, or will be passed over for promotions to the position of Water Plant Operator 1, or who did not apply for the position of Water Plant Operator 1 due to the discriminatory hiring practices of the City of Cleveland, Division of Water.

[dkt. 19, at 7].

Cleveland opposes class certification by simply arguing that Card "fails to submit an ascertainable [sic] adequate number of class members."[dkt. 21, at 12-13].

Card estimates in her Motion for Class Certification that 19-20 females should be working as WPO's [dkt. 19, at 17].  This number is derived by extrapolating from Cleveland's Division of Water.  Card claims that, between December 1, 2003 and July 1, 2009, the Division of Water "employed 1,555 people, of which 1,138 were males and 417 were females." [dkt. 19, at 17].   Thus, 28.6% of the Division of Water's workforce was female.  Card applies the same percentage to the number of WPO's for the same period, and argues that, absent sex discrimination, 19-20 of the 67 WPO's should have been female.  Card puts forth evidence showing that not a single woman worked as a WPO I during that same period.

This Court need not reach a conclusion as to the validity of Card's statistical analysis and its inherent assumptions.  It suffices that a reasonable inference could be made that, absent discrimination, there would be some non-trivial number of females working as WPO's.

The type of class Card seeks to certify is also important.  Card's proposed class is not comprised

---

[13] The court in *Nash*, 94 F.R.D at 86 certified the following class:
> All past, present, and future female applicants for the position of public safety officer with the City of Oakwood, Ohio, who have been and continue to be or might be adversely affected by the practices of Defendant.

exclusively of past or current applicants for the position of WPO.  Like *Nash*, Card seeks class certification based on Title VII violations for an unascertainable number of future applicants.  Joinder of such future plaintiffs is "inherently impracticable."  *San Antonio Hispanic Police Officer's Organization, Inc.*, 188 F.D.R. at 422.

Other factors also weigh in favor of finding that joinder would be impractical.  *See, e.g., Farm Labor Organizing Committee*, 184 F.R.D. at 586.  As state above, Card seeks injunctive and declaratory relief that, if granted, would benefit future class members.  Accordingly, the "ability or motivation of class members to institute individual suits" is diminished where many of the past and current WPO applicants may not know of Cleveland's failure to hire any women for the position of WPO, may not know that the law protects against such alleged discrimination, or where the class includes unascertainable future applicants who would benefit from potential injunctive relief.  *Id*. at 587.

"Judicial economy and avoiding multiple lawsuits" also counsel in favor of finding that joinder would not be practical.  *Id*. at 586.  As in *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452, 463 (E.D. Pa. 1968), where court saw "no necessity for encumbering the judicial process with 25 lawsuits, if one will do," this Court also finds that concerns for "judicial economy and avoiding multiple lawsuits" also counsel in favor of finding that joinder would not be practical.  *Farm Labor Organizing Committee*, 184 F.R.D. at 586.  This is especially true where the relief sought is declaratory and injunctive, as described in Rule 23(b)(2).

This case is primarily for declaratory and injunctive relief, the potential monetary recoveries of individual litigants are small in relation to the financial costs of individual litigation and the financial resources of individual members is also limited.[14]  Thus, the economics of this litigation would greatly

---

[14] The advertised salary for a WPO I position is $18.56-$20.28 per hour.

harm, if not prohibit, individual claimant's ability to institute suit.  These factors also weigh in favor of finding that joinder would be impracticable.

Accordingly, Card has demonstrated that "joinder of all members is impractical" and has satisfied the numerosity requirement of Rule 23(a)(1).

### 2.      Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  The Sixth Circuit has held that the "commonality requirements is interdependent with the impracticability of joinder requirement, and the 'tests together form the underlying conceptual basis supporting class actions."  *In re American Medical Systems*, 75 F.3d 1069, 1080 (6th Cir. 1996) (citations omitted).

"Class relief is peculiarly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class."  *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (internal quotations and citations omitted).  "For in such cases, the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23."  *Id*.

The "mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible."  *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988).

Allegations of race or gender discrimination resulting from polices or practices are often "by their very nature class suits, involving classwide wrongs" and "common questions of law or fact are typically present."  *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982) (citing *East Texas Motor Freight System Inc., Rodriquez*, 431 U.S. 395, 403 (1977)).

-22-

Here, Card asserts that the common question effecting the proposed class is "whether Defendant's pattern or practice of utterly failing to promote women to the position of WPO violates Title VII of the Civil Rights Act of 1964, as amended." [dkt. 19, at 19].

Cleveland responds by arguing that Card

> [C]annot establish commonality because Card's failure to pass the exam means that there are different questions of law and fact that would have to be resolved regarding Card's qualification as opposed to any other class member who would have passed the test and been able to have been made regular in the position if they had been found most qualified pursuant to the CBA.

[dkt. 21, at 14-15].

As previously discussed, it is disingenuous of Cleveland to argue that civil service exam scores are important in its hiring decisions.  Card has put forth evidence demonstrating a complete disregard for the civil service laws, rules, and requirements.  The evidence suggests that Cleveland makes temporary appointments -  that become permanent in all but name - according to the terms of the CBA, which are ambiguous and subjective.  The civil service rules exist to avoid the known problems associated with subjective hiring criterion, including discrimination.

Furthermore, Cleveland's own argument is that different questions of law and fact exist for "any other class member who would have passed the test and been able to have been made regular in the position *if they had been found most qualified pursuant to the CBA.*" [dkt. 21, at 14-15 (emphasis added)].  It is Card's argument, in part, that the discrimination occurred during the subjective temporary appointment process, made pursuant to the CBA's "most qualified" standard, where objective test scores are not required.  Card's evidence shows that Cleveland has apparently found that, between December 2003 and at least July 1, 2009, 67 men, but not a single women, have been "most qualified" pursuant to the CBA for a temporary appointment, regardless of whether they have passed the civil service exam.

-23-

Thus, Cleveland's argument that different questions of law and fact exist for other class members that <u>have</u> passed the civil service test and been able to attain a regular appointment from their temporary appointment is not well taken. Card has demonstrated that common questions of law and fact exist for the proposed class of past, current, and future females seeking appointment to the position of WPO I.

### 3.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defense of the class."

A claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v.. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir.2007) (quoting *In re American Med. Sys.*, 75 F.3d at 1082). The Sixth Circuit has explained that "[t]ypicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. GMC*, 133 F.3d 388, 399 (6th Cir. 1998). "For the district court to conclude that the typicality requirement is satisfied, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Romberio v. Unumprovident Corp.*, 2009 WL 87510 (6th Cir. 2009) (quoting *Beattie*, 511 F.3d at 561 (internal quotations and citations omitted)).

"[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3-13, at 3-76 (footnote omitted) (3d ed. 1992).

Card argues that her claims and "the claims of the proposed class arise from the same alleged

-24-

unlawful hiring practices of Defendants" and that these claims "operate under the same legal theory; that is, Defendant's hiring to the position of WPO is based on a discriminatory animus that excludes all women." [dkt. 19, at 21].

Cleveland argues that "Card did not pass the Civil Service exam; therefore, her claims would not be typical of the claims of women who passed the exam and were actually qualified to be WPO I." [dkt. 21, at 14].  Again, Cleveland's argument misses the point.

Card's claims involve a class of applicants for the same job, within one division of the city of Cleveland, subject to the same subjective CBA requirements, and using the same or similar numerical evidence.  *See, e.g., Jarvaise, Rand Corp*, 212 F.R.D. 1 (D.C.D.C. 2002) ( Finding typicality where "[e]ach class member's claim is dependent upon the same legal arguments and statistical evidence.").

As previously stated, the Civil Service exam is, apparently, of little or no consequence to Cleveland in the WPO I appointment process.  Consequently, it is unpersuasive for Cleveland to argue that her failure to pass the exam is somehow atypical of those who hold or have held the position of WPO I.  Similarly, Cleveland makes temporary appointments to the position of WPO I without regard for the Civil Service exam.  Thus, the fact that Card did not pass the Civil Service exam does not appear to be dispositive of her discrimination claim, and certainly is not so at this stage of the proceedings.

Accordingly, Card has shown that her claims are typical of the proposed class.

### 4.    Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interest of the class."  Fed. Rule Civ. Pro. 23(a)(4).

The Sixth Circuit has articulated two criteria for determining the adequacy of representation: "'[1] the representative must have common interests with unnamed members of the class, and [2] it must

-25-

appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Am. Medical Sys.*, 75 F.3d at 1083 (quoting *Senter v. General Motors*, 532 F.2d 511, 525 (6th Cir.1976)).

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. A class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26 (internal quotations and citations omitted). Thus, "the adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *In re Am. Medical Sys.*, 75 F.3d at 1083.

This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members. *Hansberry v. Lee*, 311 U.S. 32 (1940). So important is the requirement of Rule 23(a)(4), that this court notes that the decision "to certify a class is not irrevocable" and that under Rule 23(c)(1)(C), the court is free to decertify the class for proper reason. See *Nash*, 94 F.R.D. at 89.

Card argues that she meets both of the Sixth Circuit's requirements under Rule 23(a)(4). [dkt. 19, at 21-23]. First, Card asserts that she is a member of the class she seeks to represent because she was denied a position as WPO I based on the subjective criteria of the CBA and not the objective criterion of the Civil Service exam. Consequently, she possess "the same interests as other women in the class" and her "interests are 'not antagonistic' to the interest of the class." [dkt. 19, at 22]. Second, Card argues that her counsel is "experienced in the prosecution of class action litigation and who have demonstrated their ability to do so." Attorneys Danile J. Nealon and Alan I. Goodman have represented plaintiffs in employment matters for fifteen and twenty-five years, respectively. Attorney Nealon has also

represented plaintiffs in two prior class actions.

Cleveland argues that Card can not adequately represent the class because the class "would be qualified and she is not - therefore they would have competing interest in any appointment." [dkt. 21, at 15]. Cleveland's argument is that Card is not typical of the proposed class and, accordingly, could not adequately represent the class. *Id.* Cleveland makes no argument about the qualifications of Card's counsel.

As discussed above, this Court has not accepted Cleveland's argument that Card's claims are not typical of the class. Similarly, Card has demonstrated here that her interests are the interests of the unnamed members of the class. Card has also demonstrated that her counsel is experienced and qualified to vigorously represent the interest of the proposed class.

## C.      Rule 23(b)(2) Analysis

Having satisfied the requirements of Rule 23(a), Card must next demonstrate that her case fits into one of three types of class actions described in Rule 23(b). Card argues that her case satisfies the second type of class action, provided for in Rule 23(b)(2).

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The Supreme Court has noted that  "[c]ivil rights cases against parties charged with unlawful, class based discrimination are prime examples." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997);[15] *see also, Senter*, 532 F.2d at 525 ("Lawsuits alleging

---

[15] See the Advisory Committee's Note to the 1966 amendment to Fed. Rule Civ. Pro. 23, 28 U.S. App., pp. 696-697.  The committee wrote: "Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration."

The Committee notes also state that:

class-wide discrimination are particularly well suited for 23(b)(2) treatment since the common claim is susceptible to a single proof and subject to a single injunctive remedy.").

Rule 23(b)(2) authorizes "mandatory" class actions "under which potential class members do not have an automatic right to notice or a right to opt out of the class." *Reeb v. Ohio Dept. Of Rehab. and Correction*, 435 F. 3d 639, 645 (6th Cir. 2006).   "The defining characteristic of 'mandatory classes' is the homogeneity of the interest of the members of the class;  the more individualized determinations come into play, the more divergent the interests of the members of the class become." *Id*. at 649.

The Sixth Circuit has "'repeatedly expressed concern over the constitutionality of certifying a mandatory class action that includes claims for money damages' because of a fear that the individual class members' Seventh Amendment and due process rights might be violated." *Sloan v. BorgWarner, Inc.*, 263 F.R.D. 470, 475 (E.D. Mich., 2009) (citing *Coleman v. GMAC*, 296 F.3d 443, 447 (6th Cir. 2002)).

In *Reeb*, the Sixth Circuit held that "because of the  individualized nature of damages calculations for Title VII plaintiffs and the ability of those plaintiffs to bring individual actions, the claims for individual compensatory damages of members of a Title VII class necessarily predominate

---

This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. Declaratory relief "corresponds" to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief. The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages. Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.

over requested declaratory or injunctive relief, and individual compensatory damages are not recoverable by a Rule 23(b)(2) class."  435 F.3d at 651.

Accordingly, the court in *Reeb* gave the plaintiff the choice to proceed "in an action under Rule 23(b)(2) for declaratory or injunctive relief alone or in conjunction with compensatory and punitive damages that *inure to the group benefit*."[16] *Id*. (emphasis added).

This holding, however, "is not inconsistent with our precedents allowing back pay as a requested remedy for a certified (b)(2) class because back pay generally involves less complicated factual determinations and fewer individualized issues than the computation of compensatory damages, and back pay is an equitable remedy that does not implicate the procedural and constitutional issues that a damage award does."  *Id*. at 650 (internal citations and quotations omitted).  *See Senter*, 532 F.2d at 525 ("Appellant's primary prayer was for injunctive relief and the additional request for back pay does not preclude certification as a 23(b)(2) class action."); *see also Bolton v. Marray Envelope Corp.*, 553 F.2d 881, 885 (5th Cir. 1977) (noting that "back pay is not inconsistent with the maintenance of a Rule 23(b)(2) class action.").

Here, Card and the proposed class seek:

> [A] declaration from this Court that Defendant City of Cleveland, Division of Water, has engaged in a pattern and practice of discriminating

---

[16] This reasoning reveals a Circuit split.  In adopting this position, the Sixth Circuit joins the Fifth, Seventh, and Eleventh Circuits.  However, the Second and Ninth Circuits have reached different conclusions and allow for a more contextual approach, which is left to the sound discretion of the district judge.  *Reeb*, 435 F.3d. At 648-49.

*See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998) (reasoning adopted by the Sixth Circuit). The Seventh and Eleventh Circuits have adopted Allison 's reasoning. *See Lemon v. Int'l Union of Operating Eng'rs, Local No. 139, AFL-CIO*, 216 F.3d 577, 581 (7th Cir.2000); *Jefferson v. Ingersoll Int'l*, Inc., 195 F.3d 894 (7th Cir.1999); *Murray v. Auslander*, 244 F.3d 807 (11th Cir.2001).  *Cf.  Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147 (2d Cir.2001); *Molski v. Gleich*, 318 F.3d 937, 949-950 (9th Cir.2002) (holding that decisions based on per se rules are not appropriate because they nullify the discretion vested in the district court through Rule 23).

against women by refusing to hire women to the position fo Water Plant
Operator 1.  Further, Plaintiff and the Class seek equitable relief from this
Court, and will ask the Court that Defendant must perform specific acts
in compliance with discrimination laws.

[dkt. 19, at 25].

Cleveland's argument against Rule 23(b)(2) class certification is that "[t]his case is primarily for compensatory damages and therefore a class cannot be certified." [dkt. 21, at 16].  Cleveland's argument is not well taken, as it is clear that the primary relief sought through this lawsuit is the declaratory and injunctive relief necessary to prohibit and prevent the alleged discriminatory practices of Cleveland in violation of Title VII.

In Card's Second Amended Complaint, she asks for the following relief:

A. For a declaration that Defendant City of Cleveland, Division of Water, discriminates against women by refusing to hire women to the position of Water Plant Operator 1;

B. To order Defendant to hire Plaintiff and similarly situated individuals to the position applied for at a salary and benefits they would have been entitled to had females and African-Americans been hired fairly, including full pension, vesting and contribution credits from the pertinent period;

C. To order Defendant to institute a fair hiring process by following completely the Cleveland City Charter, civil service rules, The Ohio Constitution, and any and all other pertinent rules and regulations;

D. To order Defendant to discontinue the subjective and discriminatory hiring of Temporary Appointments to the position of Water Plant Operator 1;

E. Any other declaratory and equitable relief this Court deems appropriate;

F. In conjunction with the declaratory and injunctive relief requested, to order Defendant to pay full back pay and benefits, prejudgment interest, and compensatory and punitive damages that will inure to the benefit of the entire class; and

G. For reasonable attorney's fees and costs of this action.

[dkt. 12, at 7-8].

Injunctive and declaratory relief is appropriate under Rule 23(b)(2).  Similarly, back-pay may be

-30-

awarded in Rule 23(b)(2) class actions.  Consistent with the Sixth Circuit's holding in *Reeb*, Card seeks only those compensatory and punitive damages that inure the benefit of the entire class. 435 F.3d at 651.

Accordingly, Card may proceed with her class action under Rule 23(b)(2).

### D.    Appointment of Class Counsel

Federal Rule of Civil Procedure 23(g)(1) provides for the appointment of class counsel.  The Court has reviewed the qualifications and experiences of Alan I. Goodman and Daniel J. Nealon[17] and appoints them as class counsel for the instant case.

### IV.    CONCLUSION

For the reasons stated, this Court:

1. **DENIES in part, GRANTS in part,** Cleveland's Motion for Summary Judgment;

   a. Card's gender-based discrimination claims may proceed; and

   b. Card's race-based discrimination claims are dismissed;

2. **GRANTS** Card's Motion for Class Certification and Appointment of Class Counsel;

3. **CERTIFIES** the following Class:

   All past, current and future women since 2003 who were, are, or will be passed over for promotions to the position of Water Plant Operator 1, or who did not apply for the position of Water Plant Operator 1 due to the discriminatory hiring practices of the City of Cleveland, Division of Water.

4. **NAMES** Linda Card as class representative; and

---

[17] Section III B.4 of this opinion addresses these qualification and experience in determining their adequacy to represent the class pursuant to Rule 23(A)(4).

5.  **APPOINTS** Alan I. Goodman and Daniel J. Nealon as class counsel.


IT IS SO ORDERED.

   /s/ <em>Kathleen M. O'Malley</em>

KATHLEEN M. O'MALLEY

UNITED STATES DISTRICT JUDGE

Dated: September 30, 2010